And the court will proceed to the second case of the day, Presser v. Acacia Mental Health Clinic. Mr. Knight. Thank you, Judge. Good morning. May it please the court, I'm Patrick Knight. I represent Rose Presser, who is the relator of plaintiff in this matter. This is a false claim act matter brought against Acacia, the defendant, where she formerly was an employee as a nurse practitioner. Mr. Presser has a long, detailed background in the field of AODA and mental health outpatient services with experience at some of the more prominent clinics in Wisconsin. We're here because of a dismissal under a 9b dismissal of the complaint by the district court. And because, as we've set forth, we believe that, one, the complaint satisfies 9b, but the district court's analysis and reasons for doing so misapplied the law in this circuit and misinterpreted the facts in this case. In the district court's decision on the amended complaint, the focus was on one paragraph, paragraph 59 of the complaint, which is set forth in detail in the briefs, and that the determination of the district court was that that one paragraph then resulted in a vague equivocation about who received bills in it. And I think that is, one, a misinterpretation of the language of that paragraph, which speaks of the process in which services are provided and ultimately bills, whether they are to private individuals or to insurance or to Medicare or to Medicaid. That is, specifically in that paragraph, is set forth in the conjunctive and in no way, under the analysis and as we've set forth in the brief, would lead one to conclude that it is vague, that it leaves open the prospect that Medicaid was never billed. Particularly in this instance, where the court, for some reason in focusing on that paragraph, did not follow the directives in this circuit that the complaint in its entirety is to be reviewed. And that we have set forth in great detail that, one, obviously to review it in its entirety, two, to review it in a light most favorable to the relator here. And the complaint sets forth, I mean, paragraphs 13 through 50 describe the mandated policies that are set forth. And this is important to keep in mind factually here. This is an inner city AODA and mental health clinic that experienced clinicians are providing services in. And then there are mandated policies that are set forth in great detail, putting Acacia exactly on notice of what the specific fraudulent conduct is. And that is setting policies and directives to be applied across the board to all patients that come in, that in essence mandate and encourage that there be unnecessary procedures and unnecessary medical services and billing opportunities that arrive from those. Specifically, as set forth, requiring appointments, office appointments where not necessary, requiring urine drug screens where not necessary, taking singular services events and making them duplicative, turning them into multiple billing opportunities. But that's not all that the complaint set forth in the context. Obviously, Rose Presser, in her role as a clinician, does not have access to the billing records and the long line of cases, from Lusby, from Keshery, through Emory, all of them, that where the relator would have to, one, either, as in Shmushka said, you shouldn't be required to steal records to go in in order to pursue it. But where you set forth with specificity the types of conduct committed and set forth so that the plausible, and in this instance really the only plausible inference, is that the Medicaid program was billed. Because in addition to the other allegations of setting forth, we have an admission against interest on the part of the owner of Acacia. And that is that almost all of Acacia's patients were Title 19 or Medicaid recipients. Mr. Knight, in reading the complaint and your brief, it seemed to me that these claims could be divided into two very distinct groups. Those where your client, Ms. Presser, is able to point to the use of the wrong code, the deliberate use of the wrong code. Where she knew it was the wrong code and was told by the boss to use the wrong code. That is correct. Those seem to be matters where there's very concrete facts of a wrongful act being ordered and followed through upon. But then there are other instances where the complaint says that she really was basing her view that it was an inappropriate activity to be billed on her experience. Isn't there a difference there? It seems to me that there may well be a policy in Rule 9B that would say you need more than your personal judgment and experience. To point the finger at somebody and say, you're cheating the government. Because I think so on the basis of my experience. And saying, you're cheating the government because you told me to put down what you and I both know is the wrong code. It seems to me, qualitatively, you're at a different position on those two different sets of allegations. I can appreciate the difference in approach, but I think the end result, Judge, is the same. And for the following reasons. One, with regard to the code dispute, certainly there's no question in that regard. But with regard to the other directives involved that are issued by a layman owner from a business standpoint. For example, to set up a procedure by which you have people that you're monitoring on a regular basis. And medical necessity is certainly something that you have to sign on and to participate in the Medicaid program. Requiring then that any patient who wishes to find out any information from a clinician has to call, have it transferred to New York, and then is told to schedule an appointment to come on in without any clinical determination at all of the propriety of that. That is based on her own experience and her long history involved, and the fact that that's being ordered by a layman business owner for administrative reasons. But in those cases, as far as the record shows, there is room for a difference of opinion as to whether you should call a patient in before you renew his medications, for instance. Whether you should call a patient in more regularly than this individual thinks. She can point to no standard that's been violated in doing those things, other than her own experiential situation, her judgment, as to she wouldn't do it. The boss says these people have to be called in, she doesn't. That, I submit to you, is very different than saying the boss told me to use a false code. That is different, Judge. But, again, I look to the end result. Counselor, I wonder if that difference isn't a difference for later in the case. In both instances, at least if you have the patient, and the circumstances and the claims for payment sufficiently identified for Rule 9b purposes, you may have a different case in terms of the strength of the evidence of fraudulent intent. I agree. But that's something that can be pled generally under Rule 9. Could I direct your attention to a procedural question? Sure. Let's assume, for purposes of argument, that the district courts, that the bar that was established in the district court is correct for pleading. If you had an opportunity to file another amended complaint, would you be able to satisfy that? Would you be able to plead specifically, for example, that one or more of the four patients, John and Jane Doe as one and two, were Medicaid or Medicare patients? One, we would. And, two, I certainly, since the district court looked to the subject to their own circumstances, I might revise that language also. But, yes, that's all been determined. Acacia operates at about 75% to 80% Medicaid. Paragraph 57 and 56, 57, and 58 would indicate the vast majority of patients would have been Medicaid at that time anyway. But the reason I'm asking is because I, frankly, am kind of mystified by the decision, by the reasoning that led to the district court's refusal to allow any amendment here. If I've got this straight, it looked like your original complaint cited the correct language of the Prohibition on False Claims in 3729, but used the pre-2009 designation. It was then A-2. After the 2009 amendment, it became A-1B. But in any event, it was pretty clear that you were invoking federal jurisdiction properly. On the original complaint? Yes. That's correct, Your Honor. Okay. If I may, unless there's other questions. Let me just ask one question, if I could, Mr. Knight. Sure. Following up on Judge Ripple's series of questions, if there was a directive to enter an inappropriate code, clearly on any group of patients, she would know the name of that individual, right? But in terms . . . Couldn't we have a half a dozen names specifying that in these cases I was directed to? Certainly we can, but particularly out of discovery to match them up with the bills that were ultimately submitted. And secondly, we need a protective order in order to identify any individual. Couldn't you just allege, if you had the specificity of an individual, that that inevitably was going to result in a false billing? Couldn't that have been planned? Absolutely. And that is what we have. I thought you did plead that. We did plead that. And that is . . . You didn't, with specific names? No. No, which I don't believe we would be authorized to do under . . . But you identified individual patients . . . We did identify individuals. . . . with characteristics and pseudonyms, right? That is correct. Okay. In order to give the specificity that it involved, the directives ended up applying to those patients. And protect their privacy at the same time. That is correct. So you did not plead because of the privacy requirements? Absolutely. All right. Thank you, sir. Thank you. Mr. Jones. Good morning. May it please the Court. My name is Andrew Jones, and I represent the defendant's respondent's appellees, Acacia Mental Health and A. Freund, its principal owner. The District Court properly dismissed the claims of Ms. Presser against Acacia and Freund pursuant to Rule 9b. And we respectfully request that this Court affirm. The District Court correctly concluded, specifically, that Ms. Presser did not allege her claims under the False Claims Act, both the federal and the Wisconsin analog, with the requisite specificity as required by Rule 9b. And in reaching that conclusion, the District Court found that Ms. Presser did not allege that at least one false or fraudulent bill or claim for at least one specific patient was submitted to the federal government or the state of Wisconsin. Ms. Presser contends on appeal that the Court did not reach that conclusion based on a review of the complaint or the amended complaint as a whole, and we would respectfully disagree. The Court carefully went through each of the factual allegations raised by Ms. Presser in her complaint. What the Court ultimately did, though, was focus on the most specific allegation or set of allegations raised by Ms. Presser in the amended complaint, and those are the allegations found in paragraphs 59 and 60 of the amended complaint, which, as Mr. Knight said, cited in both parties' briefs and can be found at the District Court's decision on page 7. Mr. Jones, if the complaint had said that John Doe's 1 and 2 and Jane Doe's 1 and 2 were Medicaid patients and were subject to these general policies that would lead to fraudulent charges, is that enough? I think if this Court goes to its Lusby decision, which both sides cite heavily in their briefs, what the Court there found was that, of course in saying, and we don't disagree and we are not arguing that a plaintiff in this situation has to provide a specific invoice and attach it to the complaint. We are not arguing that. What the Court said at the same time in ruling as much, though, was that enough detail has to be provided, specific detail, to lay out the specific nature of the alleged fraud. Right. So what's the answer to my question? And the answer to your question is, if a complaint alleges that specific claims, in your example, claims for specific individuals fell into this pattern of fraud and were submitted and were paid, that, I believe, would be sufficient. If you say that they are Medicaid patients, is that enough? I mean, it's virtually inevitable that those claims are going to be submitted and that they will be paid, right? Well, in this specific instance, those are not the allegations that were made in this amended complaint. The allegation is that, at least as I look at the amended complaint, we've got four patients identified, at least as to John Doe No. 1. It's hard to imagine how that person could be anything other than a Medicaid patient. We have the individual owner, Mr. Freund, telling the plaintiff or relator that, in essence, almost all the patients are Medicaid patients. So I'm just wondering why the lesbian against Rolls-Royce notion of using a little inferences, some common sense, isn't enough to clear the bar. There's no specific allegation in this complaint that any of the patients were Medicare patients, to support a False Claims Act claim. Medicaid. Title 19 claims that would be submitted to the state of Wisconsin. And that are also paid in part by the United States government. That qualifies. None of the allegations, the paragraphs relating to the particular patients that are identified in the amended complaint, none of those allegations actually aver or allege that claims for those specific patients were submitted by Acacia, either to Medicare or to Medicaid. Can we infer that the vast majority were Medicaid patients at that point, since Freund was telling her that they really weren't set up for, they were having trouble getting set up for Medicare and they weren't set up for private pay? The allegation in the complaint is that Mr. Freund said that many or most of the patients were on Medicaid. Right. Almost all, is the allegation. And they were not, that Acacia was not set up to take private pay, and that they were having difficulty getting approval and meeting Medicare guidelines and criteria. So presumably if there's money coming in, it's probably Medicaid money, right? I think the difference between those allegations and the ones that the court found sufficient in Lusby, is that in Lusby, the plaintiff, the relator, raised specific allegations about, in that case it was about engine parts, relating to the submission of claims for those specific parts to the government and payment in return for those specific parts. Right, but he didn't have access to the payments. He just knew that the parts were being delivered and could infer that Rolls-Royce was being paid for them, right? As I understand it, there were specific allegations about payments. Could I ask you about this procedural problem? What do you think the jurisdictional defect was in the original complaint? I think Your Honor properly characterized it. Judge Stattmiller did not believe that the original complaint. I understand he didn't believe. I'm asking you, what's the jurisdictional problem in the original complaint? I don't see one. Simply that the original complaint did not rely on, did not specifically refer to a portion of the statute that would allow for relief. So that sounds like a failure to state a claim, right? Not jurisdiction, and it's just a typo. Citation to the older codification of the relevant language in the statute, right? You're familiar with the statute. I am. And you agree that's what the problem was? That was the problem. A2 and A1B, right? I'd have to go back to Judge Stattmiller's decision. And would you agree with me that that's really not a fatal problem to a complaint? I would agree with Judge Stattmiller that it was a problem requiring an amendment. And so serious that one would refuse to allow the plaintiff any further opportunity? I mean, in the wake of Twombly and Iqbal, all of us have been struggling to try to figure out what has to be alleged in complaints. And this court has said a number of times, in essence, when a district judge says what needs to be there, you usually need to give the plaintiff an opportunity to reclead to meet that judge's requirements unless it's obviously going to be futile. I think the judgment about whether to confer an additional opportunity beyond the one that Judge Stattmiller granted here is a matter of discretion for the district court. Here, Judge Stattmiller believed that the district court... Right, but I understand that generally. My problem is that his rationale for denying a further opportunity was based on a very mistaken notion of this nonexistent jurisdictional flaw in the original complaint. Well, I think it was also based on the fact that the complaint had been pending for a certain period of time. I believe it was at least a year at that point. Had you filed papers moving to dismiss that first complaint? Yes, there was a motion to dismiss on the first complaint. In that motion to dismiss, did you point out what you felt were the specificity flaws in the original complaint? Yes, Your Honor. The arguments we raised in the first motion to dismiss, obviously it was based off of a different operative complaint, but they largely paralleled the arguments that were made. And you pointed those out to the other party and to the district judge at that time? That is correct. The other point I would raise in response to your original question, the question you posed to Mr. Knight, is that the issue of whether the district court was correct or properly within its discretion in denying leave to further replead, I don't understand that to be an argument that the plaintiff has raised in its briefs. Certainly the plaintiff takes issue with the dismissal, but I don't read the plaintiff's brief or its reply to raise the issue that Judge Stattmiller was outside of his discretion in denying further leave to replead, and I would understand that to be a waiver of that argument. I think that Judge Stattmiller obviously focused on paragraphs 59 and 60 of the amended complaint, and in his judgment the language of those two paragraphs, which is substantially identical, amounted to nothing more than a vague equivocation about exactly who or whom was billed for any services that Acacia was rendering. And I think the absence of specific details to support the allegations in paragraphs 59 and 60 support that conclusion. There are no details provided about what specifically Mr. Freund said to Ms. Presser that led her to conclude that Acacia was specifically billing the federal government for its services. There are no details about what it was that her experiences at other clinics, not at Acacia, led her to believe that Acacia was specifically billing the federal government falsely. There are no allegations that, specific allegations that affirmatively assert that Acacia, that a specific patient's bill was falsely submitted to the government for payment. And likewise, Presser's allegations in paragraph 59 and 60 do not affirmatively assert that Acacia actually submitted any specific false claims to the federal government. There simply is no link between the alleged practices within the clinic and the submission of specific false bills to the federal government or to the state of Wisconsin set forth in the complaint. And I think what the district court concluded based on the absence of those kind of specifics was that the critical allegations about who was being billed really don't amount to anything more than an educated guess, an assumption. And the lack of specificity on that point highlights that critical flaw in the amended complaint. And that kind of vague speculation is categorically insufficient to state a claim under the False Claims Act, either under 12b-6, Twombly, Iqbal, and certainly under the heightened pleading requirements of 9b. And the other allegations that are cited, the other paragraphs that are cited by counsel for Ms. Presser in the appellate briefs, they don't provide any more specificity about who was being billed for specific patients than paragraphs 59 or 60. And many of them don't amount to anything more than the type of threadbare, conclusory allegations that Iqbal tells us are insufficient to state a claim. And there certainly are well-articulated policy reasons for those specificity requirements in 9b. I don't think I need to repeat them for the court at length, but it's based on those policy reasons, and given the absence of specifics in paragraphs 59 and 60 and elsewhere in the complaint about who was being billed, that the district court was correct in concluding that the complaint should be dismissed. If the complaint had said that all the patients were Medicaid patients, would that tell us satisfactorily who was being billed? If the complaint had said every single patient at Acacia was a Medicaid patient and that Medicaid was, in fact, being billed for all of those patients, exclusively a Medicaid operation, that, I think, would come closer to the situation in Lusby. But even in Lusby, the court, I think, relied quite heavily on the fact that there were specific allegations about specific parts and the details about those parts being submitted or invoices for those parts being submitted to the government and being paid. And that simply is absent from the complaint in this case. Well, Mr. Jones, paragraph 59 does mention the government, right? Absolutely it mentions the government, and I don't think the fact that the word, the conjunctive and was used was lost on the district court. But I think in context of the absence of specifics about a basis to conclude or infer that it was the federal government being billed in that complaint, the district court properly read that as basically a list of possible payors for these patients. But how do you read that with 57, which says, almost all are Medicaid patients, meaning that both the state and the federal governments are being billed? There is, what I think is absent from the complaint, simply because someone is eligible or on Title 19 does not end up meaning that that is the sole payer for that patient or the only place that a clinic like Acacia could look for payment on the claim. Where else is it getting money? I mean, come on, this is, it's not a charity. Where else is it getting its money? Again, what I believe is missing is a specific allegation in the complaint that Medicaid or Medicare was specifically billed for those patients. I see the red light is on unless there are further questions. Thank you, Mr. Jones. Thank you. Mr. Knight. The repeated position of the defendant throughout has been you have to link to a specific bill, and that just flies in the face of lust being a long line of cases after interpreting that and applying that. That linkage to a specific bill, particularly in instances where you don't have access to tie the service to a particular bill. Well, but Lusby did have, I think, five specific. I mean, Lusby, I understand the general principle, but Lusby had more specificity than his complaint. But what we have here is, one, in this instance we have specific policies that are imposed over the objection of clinicians and without a medical basis for imposing them. And then that those are directed throughout through a patient population that is primarily Medicaid recipients, and then they are directed to follow in that regard. So based on the allegations, this is an instance, I think, looking at Smushkiewicz in the homebound health care one where the argument, again, there was made that it's impossible to ascertain what if the specific false claims involve. They looked at what is plausible, and there is only one plausible result here. This is an entity that, based on 20 years' experience as a nurse practitioner in AODA and mental health clinics, had access to the information with regard to the annual revenue stream while she was in there and viewed that as double what she would have anticipated based on patient base and the amount of activity involved. How many employees beside Ms. Presser, if we know, was at this clinic? Pardon? I just want to, if we can tell from the record what's the demographics of this clinic. Who beside Ms. Presser worked there, do we know? There would have been supervising doctors, primarily services that were provided by nurse practitioners in terms of medication. There is a number, and then assistance in that regard, medical assistance. I'm just trying to see how divorced Ms. Presser was from, let's say, the billing department. I mean, was it next door? Is it not even on the site? I mean, as to her capacity to get to any more, in a way, of a record, that's all. Data was recorded and then shipped to New York. So it goes out electronically. Yes. She is not in a position to view the billing practices of the clinic? No, she is not. And that, you know, I thought that we had set forth in there. Is it correct that the False Claims Act is violated when a false claim is submitted, whether or not it is paid?  Obviously, whether the claim, if it's material and it's submitted and would be material at that decision. And the complaint does allege that Acacia was billing Medicaid and Medicare? We do. We do. And in this instance, looking at Bloom and a number of others with regard to the notice requirements of 9B and the purpose of 9B, the allegations are not vague if Acacia knows exactly what the fraud they're accused of is, and that's mandating these policies and resulting in billing the government. There is no costly discovery that has to be undertaken here. It's simply a matter of producing the records that they've already produced to the government. Thank you. All right. Thank you, Mr. Knight. Mr. Jones, thank you. The case is taken under advisory.